**MEDICO LEASING COMPANY, a Corporation, Plaintiff in Error,**

v.

**Ralph W. SMITH, W. C. and Dorene Carter, husband and wife, Wessel Buick Company, a Corporation, Country Cousins Motors, Inc., a Corporation, and Universal CIT Credit Corporation of Oklahoma City, Inc., a Corporation, Defendants in Error.**

No. 42011.

Supreme Court of Oklahoma.

July 29, 1969.

Whitebook & Knox, Charles A. Whitebook, H. Richard Raskir Michael L. Green, Tulsa, for plaintiff in error.

Baker and Baker, Tulsa, for defendants in error, W. C. Carter and Dorene Carter.

Bert M. Grigg, Tulsa, for defendants in error, Country Cousins Motor, Inc.

Milsten, Milsten & Morehead, by J. L. Morehead, by H. I. Aston, Tulsa, for defendant in error, Wessel Buick Co.

HODGES, Justice:

Plaintiff, Medico Leasing Company, sought in this action below to replevin an automobile from the defendants, W. C. and Dorene Carter. Plaintiff had turned over possession of the automobile to a used car dealer named Smith to sell. Smith, representing himself as owner, sold the automobile to the defendant Wessel Buick Company who later resold it to Country Cousins Motors, Inc. Smith did not remit the purchase money to the plaintiff. Subsequently Carters purchased the car from Country Cousins Motors. No redelivery bond was posted and plaintiff took possession of the automobile. Defendants, W. C. and Dorene Carter and Country Cousins Motors each filed cross petitions against the plaintiff seeking damages for wrongful taking.

The case was tried to a jury and at the close of plaintiff's evidence, the trial court sustained demurrers to the evidence of all defendants. The case then proceeded to trial on the cross-petitions of the defendants. At the close of all the evidence, defendants, W. C. and Dorene Carter and Country Cousins Motors, moved for a directed verdict. The motion was sustained, leaving for the jury only the amount of damages to be assessed. The jury returned a verdict in favor of the Carters in the amount of $741.00 and in favor of Country Cousins Motors in the amount of $2100.00.

The principal issue presented by this appeal is the trial court's ruling that the defendant, Wessel Buick Company, was a "buyer in the ordinary course of business" in good faith as defined by Sections 1–201(9) and 2–403(2) of the Oklahoma Uniform Commercial Code when they purchased the automobile from defendant Smith, a used car dealer, whom plaintiff had entrusted possession of the car. The trial court found that Wessel Buick acquired sufficient legal title even though the sale was made without the actual transfer of the automobile's Certificate of Title, and therefore the defendants, Carters and Country Cousins Motors, were entitled to damages for the wrongful taking.

The evidence shows substantially the following facts: Plaintiff corporation was engaged in the business of leasing various items of equipment and had leased a 1962 Buick automobile for a period of two years. Subsequent to the termination of the lease the car was offered for sale by means of advertising in the newspaper. In answer to the ad the defendant Smith telephoned the treasurer of the corporation,

hereinafter referred to as Raskin, who had placed the ad and informed him that he could sell the car. Raskin informed Smith that he could have the car to show to a prospect, however, he did not give Smith the certificate of title. Smith testifying for the plaintiff contradicted the testimony of Raskin in that he stated that the only instructions he got from Raskin was that he wanted $2200.00 for the car. Raskin was later warned by the president of plaintiff corporation to be careful of Smith. Smith was engaged in the used car business and had been for some time prior to this transaction. This fact was known to both the president of the corporation and to Raskin. In addition to showing the car to the prospect, Smith took the car to defendant Wessell Buick Co., sold it to them and retained the money himself. Some three weeks following the sale Smith gave Raskin a check for $600.00 with the notation thereon, "partial payment 62 Buick, hold for cashiers check." Raskin testified that he accepted this check on the date that it bears. This check was never cashed, however, as there were insufficient funds deposited in the bank to cover it.

Some time following the sale of the car to defendant Wessell an employee of Wessell designated as the title clerk called Smith for the certificate of title and was informed by him that the certificate had been left with her previously. Subsequent to that conversation the clerk again contacted Smith and was informed that he did not have the certificate but that he would try to get it. Not receiving the certificate, the clerk made application to the Tax Commission for a lost certificate of title and in time received it. Prior to making application for lost title defendant Wessell sold the Buick to the defendant Country Cousins Motors, who subsequently sold the car to defendants W. C. and Dorene Carter.

Meanwhile, plaintiff had not received any money for its car and further, could not find the car. Through the Tax Commission it traced the ownership registration of the car and found it to be in the possession of W. C. and Dorene Carter. Plaintiff then filed a suit in replevin, posted bond, took possession of the car from the Carters and sold it to a third party.

Plaintiff does not contest the fact that Smith is their agent, but they maintain that he was a limited agent and did not have title to the automobile or authority to convey title. They assert that Smith could not convey any better title than he had, and as he had no title, none was conveyed. It is further asserted by plaintiff that defendant Wessel was not a buyer in good faith as required by our Uniform Commercial Code, because they purchased the car without a certificate of title under facts and circumstances which would have put an ordinarily prudent businessman on inquiry.

The provisions of the code pertinent to the issues in this case are in part set out:

"12A O.S. § 2–403(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"12A O.S. § 1–201(9) 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

The "entruster" in the instant case, the plaintiff, had good title to the Buick, which was a used car. The one to whom the automobile was entrusted, Smith, as a used car dealer, is a "Merchant who deals in goods of that kind" within the meaning of the statute. Smith was known by the plaintiff to be a used car dealer. The uni-

form commercial code has not changed the law in this state regarding clothing an agent with apparent authority to convey title, especially if the agent is one who ordinarily deals in the goods which the principal has entrusted to him. A recognized principle of estoppel consistently followed by this court is that if a principal or owner of an automobile permits a dealer in automobiles to have an automobile under circumstances indicating authority to sell, he is estopped to assert title against bona fide purchaser for value without notice. Mahar v. White, 190 Okl. 434, 124 P.2d 260; Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588; Thomas Auto Sales v. Pickle, Okl., 305 P.2d 550; Young v. Seely, Okl., 366 P.2d 951; Linton v. Citizens State Bank, Okl., 368 P.2d 92.

Since Smith had apparent authority to convey legal title, the question then arises as to whether Wessell was a buyer in good faith when they purchased the car without a certificate of title.

█ It has long been held by this court that a certificate of title to an automobile issued under the motor vehicle act is not a muniment of title which establishes ownership, but is merely intended to protect the public against theft and to facilitate recovery of stolen automobiles and otherwise aid the state in enforcement of its regulation of motor vehicles. Adkisson v. Waitman, 202 Okl. 309, 213 P.2d 465; City Nat'l Bank and Trust Co. v. Finch, 205 Okl. 340, 237 P.2d 869; Wren v. Bankers Inv. Co., 207 Okl. 339, 249 P.2d 712; Al's Auto Sales v. Moskowitz, supra. This rule was not changed with the passage of the Uniform Commercial Code. Under Section 1–201(15) the certificate of title of an automobile is not listed as a "document of title". It was not necessary for the defendant Smith to deliver the certificate of title before he conveyed ownership of the Buick Automobile, and the absence of a certificate does not invalidate the sale or prevent title from passing. See Starr v. Welch, Okl., 323 P.2d 349 and cases cited therein. The sale of the automobile was complete upon delivery of the car with the intent to sell. Title 12A O.S. Section 2–401(2) states:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; * * *"

In the case of Mahar v. White, supra, an agent of the owner of a truck clothed with apparent authority to sell had the vehicle in his possession but did not have actual authority to sell the vehicle. The agent sold the truck and absconded with the money. The agent did not have the certificate of title. The court held that even though the agent informed the buyer of the truck that he did not have the certificate of title and that it would have to be completed by the owner, it was still a valid sale to an innocent purchaser. This conclusion was based on the rule that where the loss falls upon one of two innocent persons, it should fall on the principal who has armed the agent with apparent authority.

█ There was no proof in the instant case that defendant Wessell knew of the plaintiff's instructions to Smith or that he should have known. Further, the plaintiff's own evidence was contradictory regarding instructions given to Smith pertaining to the sale of the vehicle. The actions of the title clerk and Smith regarding the certificate to title taking place some time following the sale of the car by Smith to Wessell have no bearing upon the question of good faith. The sale had been completed and subsequent actions would be immaterial, especially since these discussions took place after the car had been sold by Wessell to Country Cousins Motors.

█ The plaintiff introduced no evidence to show a lack of good faith upon the part of defendant Wessell and under the rules announced in this case the agent

Smith had apparent authority to convey title to defendant Wessell. There was no proof that any defendant knew of any limitation of title or should have known prior to or at the time of purchase of the Buick automobile. We find the action of the trial court in sustaining the demurrers was proper.

Judgment affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVIDSON, WILLIAMS, BLACKBIRD, JACKSON and LAVENDER, JJ., concur.